# EXHIBIT 2

David G. Bray (# 014346)
david.bray@mwmf.com
Timothy J. Thomason (#009869)
tim.thomason@mwmf.com
David N. Ferrucci
david.ferrucci@mwmf.com
**MARISCAL, WEEKS, MCINTYRE
    & FRIEDLANDER, P.A.**
2901 North Central Avenue, Suite 200
Phoenix, Arizona 85012-2705
Phone: (602) 285-5000
Fax: (602) 285-5100

*Attorneys for defendant
DNP International, Co., Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Thermolife International, LLC, an Arizona limited liability company, <br><br>                       Plaintiff, <br>          v. <br><br> DNP International, Co., Inc., a California corporation, <br><br>                       Defendant. | Case No. _____ <br><br> **AFFIDAVIT OF DAVID G. BRAY** |

STATE OF ARIZONA        )
                                         )SS
MARICOPA COUNTY        )

David G. Bray, being first duly sworn on oath states as follows:

1.      I am a shareholder with the law firm of Mariscal, Weeks, McIntyre & Friedlander, P.A. in Phoenix, Arizona.

2.      I am one of the attorneys retained by defendant DNP International, Co., Inc. to defend it in this lawsuit.

3.      Pursuant to 29 U.S.C. § 1446(a) and LR Civ. 3.7(b), a true and correct copy of all of the process, pleadings and Orders served on Defendant in the State Court action are attached hereto as Exhibit A.

4.      In accordance with 28 U.S.C. § 1446(d) and LR Civ. 3.7(a), Defendant will serve Plaintiff with written notice of the filing of the Notice of Removal, and the Notice of Removal has been filed with Clerk for Maricopa County Superior Court, State of Arizona, a true and correct copy of which is attached hereto as Exhibit B.

5.      This Affidavit is made in support of Defendant's Notice of Removal to the United States District Court for the District of Arizona.

Dated this 4th day of October, 2012.

_____
DAVID G. BRAY

Subscribed and sworn to before me this ⁷ day of October, 2012.

_____
Notary Public

My Commission Expires:

_____

U:\ATTORNEYS\Dgb\DNP International\District Court Pleadings\DGB Affidavit (removal).doc



OFFICIAL SEAL
STACIE REYNOLDS
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Aug. 15, 2016

-2-

# EXHIBIT A

1  Gregory B. Collins (#023158)
   Julia A. Guinane (#026554)
2  KERCSMAR & FELTUS PLLC
3  6263 N. Scottsdale Road, Suite 320
   Scottsdale, Arizona 85250
4  Telephone: (480) 421-1001
   Facsimile: (480) 421-1002
5  gbc@kflawaz.com
   jag@kflawaz.com
6
7  Attorneys for Plaintiff ThermoLife International, LLC   | ORIGINAL |

8          IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9              IN AND FOR THE COUNTY OF MARICOPA

10

11 THERMOLIFE INTERNATIONAL, LLC, an        Case No. CV2012-053628
   Arizona limited liability company,
12
13                Plaintiff,

14 v.                                        SUMMONS

15 DNP INTERNATIONAL, CO., INC., a
   California corporation,
16
                   Defendants.
17
                                            If you would like legal advice from a lawyer,
18                                            contact the Lawyer Referral Service at
                                                        602-257-4434
19 THE STATE OF ARIZONA TO:                               or
                                                   www.maricopalawyers.org
20    DNP International, Co., Inc.                     Sponsored by the
      c/o Shaowei Ji                            Maricopa County Bar Association
21    12802 Leffingwell Ave, Bldg E
      Santa Fe Springs, CA 90670
22
23 YOU ARE HEREBY SUMMONED and required to appear and defend in the above-entitled
24 action in the above-entitled Court within 20 days, exclusive of the date of service, after
   service of this Summons upon you if served within the State of Arizona; or within 30 days,
25 exclusive if the date of service, if served without the State of Arizona, and you are hereby
26 notified that in case you fail to so do, judgment by default may be entered against you for the
   relief demanded in the Complaint.
27
28 Requests for reasonable accommodation for persons with disabilities must be made to the

1   division assigned to the case by parties at least 3 judicial days in advance of a scheduled
2   court proceeding.

3   The names and address of Plaintiff's attorneys are:

4         Gregory B. Collins (#023158)
5         KERCSMAR & FELTUS PLLC
6         6263 N. Scottsdale Road, Suite 320
          Scottsdale, Arizona 85250
7         (480) 421-1001
8         gbc@kflawaz.com

9   GIVEN UNDER MY HAND and seal of the above-referenced Court of Arizona, Maricopa
10  County this ___ day of _____ 2012.              SEP  4 2012

11
12         MICHAEL K. JEANES, CLERK
           MARICOPA COUNTY SUPERIOR COURT
13
14                                                  J. Fierro
                                                    Deputy Clerk
15         By:_____
16         Deputy Clerk
17
18
19
20
21
22
23
24
25
26
27
28

                                    2

Superior Court of Arizona
In Maricopa County

Case Number _____

CIVIL COVER SHEET- NEW FILING ONLY
(Please Type or Print)

Applicant's Attorney:
Gregory B. Collins

Attorney's Bar Number: #023158

Applicant's Name(s):  (List all)
ThermoLife, International, LLC

_____

_____

(List additional plaintiffs on page two and/or attach a separate sheet).

Non-Applicant's Name(s):  (List all)

DNP International, Co., Inc.

(List additional defendants on page two and/or attach a separate sheet).

---

CV2012-053628

Is Interpreter Needed?  ☐ Yes  ☒ No

If yes, what language: _____    SEP 4 2012

To the best of my knowledge, all information is true and correct.

_____
Attorney/Pro Per Signature (if no attorney, YOUR signature)

Plaintiff's Address:

c/o Kercsmar & Feltus, PLLC

6263 North Scottsdale Road, Suite 320

Scottsdale, Arizona 85250

---

EMERGENCY ORDER SOUGHT:      ☐ Temporary Restraining Order      ☐ Provisional Remedy
(if applicable)                                    ☐ OSC – Order to Show Cause          ☐ Election Challenge
                                                   ☐ Employer Sanction                  ☐ Other _____

☒ RULE 8(i) COMPLEX LITIGATION DOES NOT APPLY. (Mark appropriate box under **Nature of Action**).

☐ RULE 8(i) COMPLEX LITIGATION APPLIES   Rule 8(i) of the Rules of Civil Procedure defines a "Complex
Case" as civil actions that require continuous judicial management. A typical case involves a large number of
witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties.
(Mark appropriate box on page two as to complexity, _in addition_ to the Nature of Action case category).

## NATURE OF ACTION
(Place an "X" next to the _one_ case category that most accurately describes your primary case.)

**100 TORT MOTOR VEHICLE:**
☐ 101 Non-Death/Personal Injury
☐ 102 Property Damage
☐ 103 Wrongful Death
**110 TORT NON-MOTOR VEHICLE:**
☐ 111 Negligence
☐ 112 Product Liability – Asbestos
☐ 112 Product Liability – Tobacco
☐ 112 Product Liability – Toxic/Other
☐ 113 Intentional Tort
☐ 114 Property Damage
☐ 115 Legal Malpractice
☐ 115 Malpractice -- Other professional
☐ 117 Premises Liability
☐ 118 Slander/Libel/Defamation
☐ 116 Other (Specify)

**120 MEDICAL MALPRACTICE:**
☐ 121 Physician M.D.  ☐ 123 Hospital
☐ 122 Physician D.O   ☐ 124 Other
**130 CONTRACTS:**
☐ 131 Account (Open or Stated)
☐ 132 Promissory Note
☐ 133 Foreclosure
☐ 138 Buyer-Plaintiff
☐ 139 Fraud
☒ 134 Other Contract (i.e. Breach of Contract)
☐ 135 Excess Proceeds - Sale
☐ Construction Defects (Residential/Commercial)
    ☐ 136 Six to Nineteen Structures
    ☐ 137 Twenty or More Structures

---

## 150-199  OTHER CIVIL CASE TYPES:

☐ 156 Eminent Domain/Condemnation
☐ 151 Eviction Actions (Forcible and Special Detainers)
☐ 152 Change of Name
☐ 153 Transcript of Judgment
☐ 154 Foreign Judgment
☐ 158 Quiet Title
☐ 160 Forfeiture
☐ 175 Election Challenge
☐ 179 Employer Sanction Action (A.R.S. §23-212)
☐ 180 Injunction against Workplace Harassment
☐ 181 Injunction against Harassment
☐ 182 Civil Penalty
☐ 186 Water Rights (Not General Stream  Adjudication)
☐ 187 Real Property
☐ Sexually Violent Persons (A.R.S. §36-3704)
   (Except Maricopa County)
☐ Minor Abortion (See Juvenile in Maricopa County)
☐ Special Action Against Lower Courts
   (See lower court appeal cover sheet in Maricopa)

## 150-199 UNCLASSIFIED CIVIL CASE TYPES:

☐ Administrative Review
   (See lower court appeal cover sheet in Maricopa)
☐ 150 Tax Appeal
(All other tax matters must be filed in the AZ Tax
Court)

Case No. _____

☐ 155 Declaratory Judgment
☐ 157 Habeas Corpus
☐ 184 Landlord Tenant Dispute - Other
☐ 159 Restoration of Civil Rights (Federal)
☐ 159 Clearance of Records (A.R.S. §13-4051)
☐ 190 Declaration of Factual Innocence(A.R.S.§12-771)
☐ 191 Declaration of Factual Improper Party Status
☐ 193 Vulnerable Adult (A.R.S. §46-451)
☐ 165 Tribal Judgment
☐ 167 Structured Settlement (A.R.S. §12-2901)
☐ 169 Attorney Conservatorships (State Bar)
☐ 170 Unauthorized Practice of Law (State Bar)
☐ 171 Out-of-State Deposition for Foreign Jurisdiction
☐ 172 Secure Attendance of Prisoner
☐ 173 Assurance of Discontinuance
☐ 174 In-State Deposition for Foreign Jurisdiction
☐ 176 Eminent Domain–Light Rail Only
☐ 177 Interpleader– Automobile Only
☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
☐ 183 Employment Dispute - Discrimination
☐ 185 Employment Dispute - Other
☐ 163 Other
                    (Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

☐ Antitrust/Trade Regulation
☐ Construction Defect with many parties or structures
☐ Mass Tort
☐ Securities Litigation with many parties
☐ Environmental Toxic Tort with many parties
☐ Class Action Claims
☐ Insurance Coverage Claims arising from the above-listed case types
☐ A Complex Case as defined by Rule 8(i) ARCP

Additional Plaintiff(s)

_____

_____

Additional Defendant(s)

_____

Gregory B. Collins (#023158)
Julia A. Guinane (#026554)
KERCSMAR & FELTUS PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
Telephone: (480) 421-1001
Facsimile: (480) 421-1002
gbc@kflawaz.com
jag@kflawaz.com

Attorneys for Plaintiff ThermoLife International, LLC



SEP 4 2012



MICHAEL K. JEANES, CLERK
J. FIERRO
DEPUTY CLERK

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF MARICOPA

THERMOLIFE INTERNATIONAL, LLC, an
Arizona limited liability company,

               Plaintiff,

v.

DNP  INTERNATIONAL,  CO.,  INC.,  a
California corporation,

               Defendants.

Case No. CV 2012-053628

**CERTIFICATE OF
COMPULSORY ARBITRATION**

      Undersigned counsel hereby certifies that he is familiar with the dollar amounts and other limitations set forth in Local Rule 3.10 of the Maricopa County Superior Court, and further certifies that this case is **not** subject to compulsory arbitration as set forth in Arizona Rules of Civil Procedure 72 through 77.

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

1

DATED this 4th day of September, 2011.

KERCSMAR & FELTUS PLLC

By: _____
Gregory B. Collins
Julia A. Guinane
6263 North Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
Attorneys for Plaintiff ThermoLife International, LLC

## CERTIFICATE OF SERVICE

I certify that on September 4, 2012, I filed this document with the Clerk of the Court and served a copy of this document by regular mail on the following:

Court Administrator
201 W. Jefferson
Phoenix, Arizona 85003-2205

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1100

2



1   Gregory B. Collins (#023158)
    Julia A. Guinane (#026554)
2   KERCSMAR & FELTUS PLLC
3   6263 N. Scottsdale Road, Suite 320
    Scottsdale, Arizona 85250
4   Telephone: (480) 421-1001
    Facsimile: (480) 421-1002
5   gbc@kflawaz.com
    jag@kflawaz.com
6
7   Attorneys for Plaintiff ThermoLife International, LLC



SEP 4 2012

MICHAEL K. JEANES, CLERK
J PERRO
DEPUTY CLERK

8           IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
9              IN AND FOR THE COUNTY OF MARICOPA
10

11  THERMOLIFE INTERNATIONAL, LLC, an
12  Arizona limited liability company,          Case No. CV 2012-053628
13              Plaintiff,
14  v.                                          COMPLAINT
15  DNP INTERNATIONAL, CO., INC., a
    California corporation,
16              Defendants.
17
18
19          For its Complaint against Defendant DNP International, Inc. ("DNP"), Plaintiff

20  ThermoLife International, LLC ("ThermoLife") alleges as follows:

                        PARTIES, JURISDICTION, AND VENUE
21
22          1.      ThermoLife is a limited liability company organized and existing under the

23  laws of the State of Arizona, with its principal place of business located in Phoenix,

24  Arizona.

25          2.      This Court has jurisdiction over the subject matter of this action pursuant to

26  A.R.S. § 12-123 and Article 6, Section 14 of the Arizona Constitution.

27          3.      Jurisdiction and venue are proper in this Court because: (i) the Plaintiff is

28  domiciled in, found in, has agents in, and/or transacts his/its business and affairs in, the

1

1    State of Arizona; and (ii) a substantial part of the events or omissions giving rise to the

2    claims for relief occurred in the State of Arizona.

3        4.    Jurisdiction is also proper here because Defendant DNP does business in

4    Arizona with Arizona residents.

5        5.    Venue is proper in this Court under A.R.S. § 12-401.

6                           **FACTUAL ALLEGATIONS**

7        6.    On or about May 2, 2012, ThermoLife and DNP entered into a contract,

8    titled "BLANKET ORDER CONFIRMATION" (hereinafter "the Contract").

9        7.    Under the terms of the Contract, DNP agreed to sell ThermoLife 118,350

10   kilograms ("kg") of L-Arginine Nitrate for a set price from May 2, 2012 to November 1,

11   2013.

12       8.    DNP agreed that the L-Arginine Nitrate contain less than .05 parts per

13   million of lead.

14       9.    Also under the terms of the Contract, DNP warranted and agreed that it

15   would timely fill all orders submitted by ThermoLife for L-Arginine Nitrate from the date

16   of the Contract through November 1, 2013.

17       10.   DNP also agreed that if it failed to provide L-Arginine that met the

18   specifications set forth in the Contract, it would be liable for ThermoLife's special,

19   incidental and consequential damages.

20       11.   The Contract obligated ThermoLife to purchase 18,350 kg of L-Arginine

21   Nitrate and gave ThermoLife the option to purchase up to 118,350 kg of L-Arginine

22   Nitrate at a guaranteed price through November 1, 2013.

23       12.   ThermoLife submitted its first order for L-Arginine Nitrate on May 2, 2012,

24   the date it signed the Contract.  ThermoLife's first order of L-Arginine Nitrate was for the

25   entire amount it was obligated to purchase under the Contract, 18,350 kg.

26       13.   DNP was unable to fill even this initial order.

27       14.   Although DNP continually promised ThermoLife that the product would be

28   shipped any day, DNP never shipped the product.

Keransiar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

2

15.     Finally, on or about July 23, 2012, DNP disclosed that it could not meet the specifications for L-Arginine Nitrate set forth in the Contract.

16.     DNP requested more time to manufacture product that conformed with the specifications set forth in the Contract.

17.     At this time, ThermoLife informed DNP that ThermoLife needed the product immediately and if DNP could not provide the product ThermoLife would find another supplier.

18.     Despite DNP's promises, DNP failed to deliver any product that met the specifications set forth in the Contract.

19.     DNP's failure resulted in a complete and total breach of the material terms of the contract and DNP is liable for its breach as well as ThermoLife's special, incidental and consequential damages.

20.     At least one of ThermoLife's customers terminated its contract with ThermoLife as a direct result of DNP's failure to produce and deliver L-Arginine Nitrate.

21.     With DNP having already materially breached the Contract, ThermoLife took action to mitigate its harm. ThermoLife sought an alternative source for L-Arginine Nitrate.

22.     ThermoLife determined that from the date it agreed to purchase L-Arginine Nitrate from an alternative source it would take a minimum of 40-60 days to obtain sufficient quantities of L-Arginine Nitrate.

23.     In order to prevent further harm to ThermoLife and its customers, although DNP had materially breached the Contract, on August 28, 2012, ThermoLife demanded that DNP immediately provide whatever L-Arginine Nitrate DNP had in its possession that met the specifications set forth in the Contract. ThermoLife demanded that the L-Arginine Nitrate be provided under terms different than those set forth in the Contract.

24.     DNP responded to ThermoLife's demand on August 30, 2012, indicating that it had produced 21,000 kg of L-Arginine Nitrate that met the specifications set forth in the Contract.

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 330
Scottsdale, Arizona 85250
(480) 421-1001

3

25.   The 21,000 kg that DNP had produced was far less than the amount ThermoLife needed to fulfill its obligations to its customers.   ThermoLife had an immediate need for 60,000 kg of L-Arginine Nitrate.

26.   Before shipping the 21,000 kg of L-Arginine Nitrate that it had produced, DNP demanded payment in advance.

27.   DNP's demand for payment in advance was directly contrary to the terms of the parties' Contract.   DNP and ThermoLife had orally agreed that payment on any shipment was due 30 days after the product was delivered.   This oral agreement was entirely consistent with the parties' past course of conduct and consistent with standard practice in the dietary supplement industry.

28.   In addition to demanding payment in advance, DNP also demanded that ThermoLife waive its right to terminate the parties' agreement as a result of a DNP's prior breach of the Contract.

29.   Further, after demanding that ThermoLife waive its right to terminate the Contract, DNP sought to change the terms of the Contract going forward.   DNP demanded that ThermoLife agree to pay for any future shipments of the product cash on delivery ("COD").

30.   DNP also demanded that for all orders going forward ThermoLife agree to allow DNP 8 weeks from the date ThermoLife placed its order to make delivery.   Further, DNP was only willing to guarantee 8 week delivery for orders that did not exceed 40,000 kg. These terms were contrary to the parties' Contract, which required DNP to timely fill all orders regardless of the size of the order.

31.   DNP had previously repudiated the Contract by stating that if ThermoLife sought to fill the entire Blanket Confirmation Order all at one time, 118,350 kg, DNP could not meet this demand.

32.   The terms that DNP offered in order to sell 21,000 kg of L-Arginine Nitrate that DNP had produced were not commercially reasonable.   Further, to the extent DNP was not in material breach of the Contract prior to offering these modified terms, DNP's

Keremar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

4

1  demand that ThermoLife accept performance on terms materially different than those set
2  forth in the Blanket Order Confirmation constituted a material breach and repudiation of
3  the Contract.

4      33.    As a result of DNP's unreasonable demands, ThermoLife was unable to
5  mitigate its harm by obtaining L-Arginine Nitrate from DNP.  DNP's conduct forced
6  ThermoLife to obtain an alternative source for L-Arginine Nitrate.

7      34.    DNP's material breach of the Contract and repudiation of the Contract has
8  caused ThermoLife harm.

9      35.    DNP's material breach of the Contract and repudiation of the Contract has
10 caused ThermoLife and its customers to suffer special, incidental and consequential
11 damages.  These damages were entirely foreseeable to DNP and DNP is liable for these
12 damages.

13     36.    DNP's conduct has caused ThermoLife to lose business and goodwill and
14 has reduced ThermoLife's business expectancies.

**COUNT I**

**(BREACH OF CONTRACT)**

17     37.    ThermoLife realleges and incorporates by reference the allegations
18 contained in the proceeding paragraphs as if fully set forth herein.

19     38.    DNP and ThermoLife entered into a binding and enforceable contract.

20     39.    As set forth above, DNP has materially breached and repudiated the
21 Contract.

22     40.    At all relevant times, ThermoLife has honored its obligations under the
23 Contract.

24     41.    DNP's breach of contract has caused ThermoLife harm, including special,
25 incidental and consequential damages.

26     42.    This action arises out of contract and ThermoLife is entitled to an award of
27 its reasonable attorneys' fees under A.R.S. 12-341.01.

28

Keremar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

5

## COUNT II

### (BREACH OF THE IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING)

43.     ThermoLife realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

44.     The Blanket Confirmation Order includes an implied covenant of good faith and fair dealing.  The implied covenant prevents DNP from acting to deprive ThermoLife of the benefit of the bargain as provided in the Contract.

45.     DNP has breached the implied covenant and good faith and fair dealing.

46.     As a direct and proximate cause of DNP's breach of the implied covenant of good faith and fair dealing, ThermoLife has suffered harm.

47.     This count arises out of contract. Accordingly, ThermoLife is entitled to its reasonable attorneys' fees under A.R.S. § 12-341.01(A).

WHEREFORE, ThermoLife demands judgment in its favor and against DNP as follows:

A.     Awarding ThermoLife damages in an amount to be proven at trial, plus interest and the costs of suit;

B.     Awarding ThermoLife its attorneys' fees pursuant to A.R.S. § 12-341.01;

C.     Awarding prejudgment and post-judgment interest to the extent allowable by law; and

D.     Granting ThermoLife such further and additional relief as the Court deems just and proper.

Keesmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

6

DATED this 4th day of September, 2011.

KERCSMAR & FELTUS PLLC

By: _____
    Gregory B. Collins
    Julia A. Guinane
    6263 North Scottsdale Road, Suite320
    Scottsdale, Arizona 85250
    Attorneys for Plaintiff ThermoLife International, LLC

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

7





1  Gregory B. Collins (#023158)
   Julia A. Guinane (#026554)
2  KERCSMAR & FELTUS PLLC
3  6263 N. Scottsdale Road, Suite 320
   Scottsdale, Arizona 85250
4  Telephone: (480) 421-1001
   Facsimile: (480) 421-1002
5  gbc@kflawaz.com
   jag@kflawaz.com
6

7  Attorneys for Plaintiff ThermoLife International, LLC

8         IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9            IN AND FOR THE COUNTY OF MARICOPA

10

11 THERMOLIFE INTERNATIONAL, LLC, an
   Arizona limited liability company,           Case No. 2012-053628
12                                              CV2012-053628
              Plaintiff,
13
   v.                                           COMPLAINT
14
   DNP   INTERNATIONAL,   CO.,   INC.,   a
15 California corporation,
16
              Defendants.
17

18         For its Complaint against Defendant DNP International, Inc. ("DNP"), Plaintiff

19 ThermoLife International, LLC ("ThermoLife") alleges as follows:

20                    PARTIES, JURISDICTION, AND VENUE

21         1.    ThermoLife is a limited liability company organized and existing under the

22 laws of the State of Arizona, with its principal place of business located in Phoenix,

23 Arizona.

24         2.    This Court has jurisdiction over the subject matter of this action pursuant to

25 A.R.S. § 12-123 and Article 6, Section 14 of the Arizona Constitution.

26         3.    Jurisdiction and venue are proper in this Court because: (i) the Plaintiff is

27 domiciled in, found in, has agents in, and/or transacts his/its business and affairs in, the

28

                                      1

State of Arizona; and (ii) a substantial part of the events or omissions giving rise to the claims for relief occurred in the State of Arizona.

4.     Jurisdiction is also proper here because Defendant DNP does business in Arizona with Arizona residents.

5.     Venue is proper in this Court under A.R.S. § 12-401.

## FACTUAL ALLEGATIONS

6.     On or about May 2, 2012, ThermoLife and DNP entered into a contract, titled "BLANKET ORDER CONFIRMATION" (hereinafter "the Contract").

7.     Under the terms of the Contract, DNP agreed to sell ThermoLife 118,350 kilograms ("kg") of L-Arginine Nitrate for a set price from May 2, 2012 to November 1, 2013.

8.     DNP agreed that the L-Arginine Nitrate contain less than .05 parts per million of lead.

9.     Also under the terms of the Contract, DNP warranted and agreed that it would timely fill all orders submitted by ThermoLife for L-Arginine Nitrate from the date of the Contract through November 1, 2013.

10.     DNP also agreed that if it failed to provide L-Arginine that met the specifications set forth in the Contract, it would be liable for ThermoLife's special, incidental and consequential damages.

11.     The Contract obligated ThermoLife to purchase 18,350 kg of L-Arginine Nitrate and gave ThermoLife the option to purchase up to 118,350 kg of L-Arginine Nitrate at a guaranteed price through November 1, 2013.

12.     ThermoLife submitted its first order for L-Arginine Nitrate on May 2, 2012, the date it signed the Contract. ThermoLife's first order of L-Arginine Nitrate was for the entire amount it was obligated to purchase under the Contract, 18,350 kg.

13.     DNP was unable to fill even this initial order.

14.     Although DNP continually promised ThermoLife that the product would be shipped any day, DNP never shipped the product.

2

Kersmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

15.     Finally, on or about July 23, 2012, DNP disclosed that it could not meet the specifications for L-Arginine Nitrate set forth in the Contract.

16.     DNP requested more time to manufacture product that conformed with the specifications set forth in the Contract.

17.     At this time, ThermoLife informed DNP that ThermoLife needed the product immediately and if DNP could not provide the product ThermoLife would find another supplier.

18.     Despite DNP's promises, DNP failed to deliver any product that met the specifications set forth in the Contract.

19.     DNP's failure resulted in a complete and total breach of the material terms of the contract and DNP is liable for its breach as well as ThermoLife's special, incidental and consequential damages.

20.     At least one of ThermoLife's customers terminated its contract with ThermoLife as a direct result of DNP's failure to produce and deliver L-Arginine Nitrate.

21.     With DNP having already materially breached the Contract, ThermoLife took action to mitigate its harm.  ThermoLife sought an alternative source for L-Arginine Nitrate.

22.     ThermoLife determined that from the date it agreed to purchase L-Arginine Nitrate from an alternative source it would take a minimum of 40-60 days to obtain sufficient quantities of L-Arginine Nitrate.

23.     In order to prevent further harm to ThermoLife and its customers, although DNP had materially breached the Contract, on August 28, 2012, ThermoLife demanded that DNP immediately provide whatever L-Arginine Nitrate DNP had in its possession that met the specifications set forth in the Contract.  ThermoLife demanded that the L-Arginine Nitrate be provided under terms different than those set forth in the Contract.

24.     DNP responded to ThermoLife's demand on August 30, 2012, indicating that it had produced 21,000 kg of L-Arginine Nitrate that met the specifications set forth in the Contract.

3

25.     The 21,000 kg that DNP had produced was far less than the amount ThermoLife needed to fulfill its obligations to its customers.     ThermoLife had an immediate need for 60,000 kg of L-Arginine Nitrate.

26.     Before shipping the 21,000 kg of L-Arginine Nitrate that it had produced, DNP demanded payment in advance.

27.     DNP's demand for payment in advance was directly contrary to the terms of the parties' Contract.     DNP and ThermoLife had orally agreed that payment on any shipment was due 30 days after the product was delivered.     This oral agreement was entirely consistent with the parties' past course of conduct and consistent with standard practice in the dietary supplement industry.

28.     In addition to demanding payment in advance, DNP also demanded that ThermoLife waive its right to terminate the parties' agreement as a result of a DNP's prior breach of the Contract.

29.     Further, after demanding that ThermoLife waive its right to terminate the Contract, DNP sought to change the terms of the Contract going forward.     DNP demanded that ThermoLife agree to pay for any future shipments of the product cash on delivery ("COD").

30.     DNP also demanded that for all orders going forward ThermoLife agree to allow DNP 8 weeks from the date ThermoLife placed its order to make delivery.     Further, DNP was only willing to guarantee 8 week delivery for orders that did not exceed 40,000 kg. These terms were contrary to the parties' Contract, which required DNP to timely fill all orders regardless of the size of the order.

31.     DNP had previously repudiated the Contract by stating that if ThermoLife sought to fill the entire Blanket Confirmation Order all at one time, 118,350 kg, DNP could not meet this demand.

32.     The terms that DNP offered in order to sell 21,000 kg of L-Arginine Nitrate that DNP had produced were not commercially reasonable.     Further, to the extent DNP was not in material breach of the Contract prior to offering these modified terms, DNP's

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

1   demand that ThermoLife accept performance on terms materially different than those set
2   forth in the Blanket Order Confirmation constituted a material breach and repudiation of
3   the Contract.

4       33.   As a result of DNP's unreasonable demands, ThermoLife was unable to
5   mitigate its harm by obtaining L-Arginine Nitrate from DNP.  DNP's conduct forced
6   ThermoLife to obtain an alternative source for L-Arginine Nitrate.

7       34.   DNP's material breach of the Contract and repudiation of the Contract has
8   caused ThermoLife harm.

9       35.   DNP's material breach of the Contract and repudiation of the Contract has
10   caused ThermoLife and its customers to suffer special, incidental and consequential
11   damages.  These damages were entirely foreseeable to DNP and DNP is liable for these
12   damages.

13       36.   DNP's conduct has caused ThermoLife to lose business and goodwill and
14   has reduced ThermoLife's business expectancies.

15   COUNT I

16   (BREACH OF CONTRACT)

17       37.   ThermoLife realleges and incorporates by reference the allegations
18   contained in the proceeding paragraphs as if fully set forth herein.

19       38.   DNP and ThermoLife entered into a binding and enforceable contract.

20       39.   As set forth above, DNP has materially breached and repudiated the
21   Contract.

22       40.   At all relevant times, ThermoLife has honored its obligations under the
23   Contract.

24       41.   DNP's breach of contract has caused ThermoLife harm, including special,
25   incidental and consequential damages.

26       42.   This action arises out of contract and ThermoLife is entitled to an award of
27   its reasonable attorneys' fees under A.R.S. 12-341.01.

28

Kercsmar & Feltus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

## COUNT II

### (BREACH OF THE IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING)

43.    ThermoLife realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

44.    The Blanket Confirmation Order includes an implied covenant of good faith and fair dealing.  The implied covenant prevents DNP from acting to deprive ThermoLife of the benefit of the bargain as provided in the Contract.

45.    DNP has breached the implied covenant and good faith and fair dealing.

46.    As a direct and proximate cause of DNP's breach of the implied covenant of good faith and fair dealing, ThermoLife has suffered harm.

47.    This count arises out of contract. Accordingly, ThermoLife is entitled to its reasonable attorneys' fees under A.R.S. § 12-341.01(A).

WHEREFORE, ThermoLife demands judgment in its favor and against DNP as follows:

A.    Awarding ThermoLife damages in an amount to be proven at trial, plus interest and the costs of suit;

B.    Awarding ThermoLife its attorneys' fees pursuant to A.R.S. § 12-341.01;

C.    Awarding prejudgment and post-judgment interest to the extent allowable by law; and

D.    Granting ThermoLife such further and additional relief as the Court deems just and proper.

Karsmar & Fellus PLLC
6263 N. Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
(480) 421-1001

6

DATED this 4th day of September, 2011.

KERCSMAR & FELTUS PLLC

By: _____
Gregory B. Collins
Julia A. Guinane
6263 North Scottsdale Road, Suite320
Scottsdale, Arizona 85250
Attorneys for Plaintiff ThermoLife International, LLC

# EXHIBIT B

1 | Firm E-mail Address:  courtdocs@mwmf.com

2 | David G. Bray (# 014346)
david.bray@mwmf.com
3 | Timothy J. Thomason (#009869)
tim.thomason@mwmf.com
4 | David N. Ferrucci (#027423)
david.ferrucci@mwmf.com
5 | **MARISCAL, WEEKS, MCINTYRE**
**& FRIEDLANDER, P.A.**
6 | 2901 North Central Avenue, Suite 200
Phoenix, Arizona 85012-2705
7 | Phone: (602) 285-5000
Fax: (602) 285-5100
8 |
Attorneys for Defendant
9 |

10 | **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

11 |

| | |
|---|---|
| 12  THERMOLIFE INTERNATIONAL, LLC, an Arizona limited liability company, | NO. CV2012-053628 |
| 13 | |
| 14                   Plaintiff, | **NOTICE OF FILING NOTICE OF** |
| 15        v. | **REMOVAL OF ACTION TO FEDERAL COURT BASED ON DIVERSITY JURISDICTION [28 U.S.C. § 1332]** |
| 16  DNP INTERNATIONAL, CO., INC., a California corporation, | |
| 17 | |
| 18                   Defendant. | |

19 |

20 | PLEASE TAKE NOTICE that on the 4th day of October, 2012, the undersigned caused to

21 | be filed with the United States District Court for Arizona Defendant's Notice of Removal, a copy

22 | of which is attached and hereby served upon you.

23 | Further notice is hereby given that pursuant to 28 U.S.C. § 1446(d), the filing of the

24 | Notice of Removal of Civil Action in the United States District Court, together with the filing of

25 | a copy of the Notice of Removal of Civil Action with the Clerk of this Court, effects the removal

26 |

- 1 -

1  of this action, and the Superior Court of the State of Arizona, in and for the County of Maricopa,

2  may proceed no further with this action unless and until the case is remanded.

3        **DATED** this 4th day of October 2012.

4                              **MARISCAL, WEEKS, McINTYRE**
5                                **& FRIEDLANDER, P.A.**

6

7        By:  /s/ David G. Bray
                David G. Bray
                Timothy J. Thomason

8                  David N. Ferrucci
                2901 N. Central Ave., Suite 200

9                  Phoenix, Arizona 85012
                Attorneys for Defendant

10

11  **ORIGINAL** of the foregoing e-filed this
4th day of October, 2012, with the Clerk

12  of the Superior Court, and a **COPY** mailed
this same date to:

13

14  Gregory B. Collins, Esq.
Julia A. Guinane, Esq.

15  KERCSMAR & FELTUS PLLC
6263 North Scottsdale Road, Suite 320

16  Scottsdale, Arizona  85250
*Attorneys for Thermolife International, LLC*

17

18  /s/ Kristi Arendt

19

20

21

22

23  U:\ATTORNEYS\Dgb\DNP International\Superior Court Pleadings\Notice of Removal of Action to Federal Court.doc

24

25

26